IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA

Case No. 1:14-cv-21658-KMM

ALVERTIS ISBELL,

                Appellant,

vs.

DM RECORDS, INC.,

                Appellee.

_____/

**ORDER**

THIS CAUSE is before the Court on appeal from the Bankruptcy Court's March 11, 2014, Order (1) Granting in Part and Denying in Part Alleged Debtor's Motion for Summary Judgment, (2) Denying Petitioning Creditor's Motion for Summary Judgment, and (3) Dismissing Involuntary Petition. See In re DM Records, Inc., No. 13-13281-RAM (Bankr. S.D. Fla. Mar. 11, 2014), (Bankr. ECF No. 98).[1]  Before the Court are Appellant's Brief, (ECF No. 5); Appellee DM Records' Brief in Opposition to Appellant's Brief, (ECF No. 6); and Appellant's Reply Brief, (ECF No. 8).  Appellant Alvertis Isbell ("Isbell") also filed an Agreed Motion to Supplement Record on appeal with the Bankruptcy Court's January 2, 2014, Order Granting in Part and Denying in Part Motion to Amend List of Creditors, see (ECF No. 7), which the Court granted, see (ECF No. 9).  This Court has jurisdiction over this appeal pursuant to 28 U.S.C. § 158(a)(1).

For the reasons stated herein, the Bankruptcy Court's March 11, 2014, Order is AFFIRMED.

_____

[1] The designation "Bankr. ECF" refers to the docket in the bankruptcy case.

I.      **BACKGROUND**

This cause arises from an involuntary bankruptcy petition filed by Appelllant Isbell against Appellee DM Records.  On July 3, 2002, Isbell sued DM Records for copyright infringement in the United States District Court for the Northern District of Texas.  See Order Denying Def.'s Renewed Mot. for J. as a Matter of Law 1, Isbell v. DM Records, Inc., No. 4:07-cv-00146-RAS (E.D. Tex. July 17, 2013).  The original complaint sought a declaratory judgment that Isbell owns certain musical composition copyrights as well as damages for infringement of those copyrights.  Id.  The case eventually was transferred to the United States District Court for the Eastern District of Texas because DM Records claimed that it had acquired the copyrights at issue when it purchased the assets of an Isbell-owned company through a bankruptcy action in the Eastern District of Texas.  Id. at 1–2.  An eleven-day jury trial was held in the copyright infringement action.  Id. at 3.  At the close of the evidence, the parties submitted motions for judgment as a matter of law.  Id.  The court granted Isbell's motion and denied DM Records' motion.  Id.  A jury then awarded Isbell more than $2,000,000 in compensatory damages.  Appellant's Br. 1.  DM Records' motion for relief from final judgment is currently pending in that case.

On February 13, 2013, in an effort to collect on its judgment, Isbell filed an involuntary petition in the United States Bankruptcy Court for the Southern District of Florida.  See Involuntary Pet., (Bankr. ECF No. 1).  DM Records moved to dismiss the petition, arguing that it had at least twelve creditors and, therefore, three petitioning creditors were required under 11 U.S.C. § 303(b) to commence an involuntary case.[2]  See Order Denying Mot. to Dismiss 2,

---

[2] Under Section 303(b), if the alleged debtor has twelve or more creditors, three or more petitioning creditors are needed to commence an involuntary case.  See 11 U.S.C. § 303(b)(1).  Conversely, if the alleged debtor has fewer than twelve creditors, one petitioning creditor is sufficient.  See id. § 303(b)(2).

(Bankr. ECF No. 21).  DM Records also argued that it was generally paying its debts.  Id.  In support of its motion, DM Records listed twenty-eight creditors on its Rule 1003 list of creditors.[3]  See id.  In response, Isbell argued that many of the creditors on the list did not qualify as creditors under Section 303(b), and so the total number of creditors was less than twelve.  See Resp. to Mot. to Dismiss 2–7, (Bankr. ECF No. 20).  On that basis, Isbell maintained, the involuntary petition he filed alone was procedurally proper.  Id.  The Bankruptcy Court denied DM Records' Motion to Dismiss and gave Isbell time to challenge the listed creditors or, alternatively, obtain the joinder of two additional petitioning creditors.  See Order Denying Mot. to Dismiss 3.

On May 17, 2013, Isbell responded to the Rule 1003 list of creditors.  Isbell argued for the exclusion of over twenty of DM Records' creditors, leaving less than twelve.  See Resp. to Mot. to Dismiss 2–7.  Following several amendments to its list of creditors, the number of creditors on the DM Records' Rule 1003 list at the time of the Bankruptcy Court's final judgment was thirty-three.  See Appellee's Opp'n Br. Ex. A.

The parties cross-moved for summary judgment.  The issues both summary judgment motions raised were (1) whether DM Records had twelve creditors on the date of the petition and, therefore, three petitioning creditors were required under 11 U.S.C. § 303(b) to commence the involuntary case; and (2) whether DM Records was generally paying its debts as they became due on the petition date pursuant to 11 U.S.C. § 303(h)(1).  See Order (1) Granting in Part and Denying in Part Alleged Debtor's Motion for Summary Judgment, (2) Denying Petitioning

---

[3] Attached as exhibits to DM Records' Motion to Dismiss were the Affidavit of DM Record's president, Mark Watson, and a list of DM Record's creditors.  See id.  The bankruptcy court treated these exhibits as a Rule 1003 list.  See id.

Creditor's Motion for Summary Judgment, and (3) Dismissing Involuntary Petition at 2, (Bankr. ECF No. 98).

On March 11, 2014, the Bankruptcy Court entered an Order (1) granting in part and denying in part DM Records' Motion for Summary Judgment, (2) denying Isbell's Motion for Summary Judgment, and (3) dismissing the involuntary petition.  Id.  The Bankruptcy Court found that DM Records had at least twelve creditors on the petition date, but found material issues of fact as to whether DM Records was paying its debts as they became due.  Id.

Isbell appeals from the Bankruptcy Court's March 11, 2014, Order.

## II.    DISCUSSION

There are two issues before this Court on appeal.  First, whether the Bankruptcy Court erred in granting DM Records' Motion for Summary Judgment upon finding that it had twelve creditors on the date of the petition.  Second, whether the Bankruptcy Court erred in denying Isbell's Motion for Summary Judgment upon finding material issues of fact over whether DM Records was generally paying its debts as they became due.  However, as shown below, the latter issue is moot, and the Court thus declines to address it.

### 1.  The Bankruptcy Court Did Not Err in Granting DM Records' Motion for Summary Judgment and Dismissing the Involuntary Petition

The Court holds that the Bankruptcy Court did not err in granting DM Records' Motion for Summary Judgment and dismissing the involuntary petition upon finding that it had at least twelve creditors on the petition date.

#### i.   Standard of Review

On appeal, this Court reviews a bankruptcy court's legal rulings de novo and its findings of fact for clear error.  See, e.g., In re Rosenberg, No. 13-14781, 2015 WL 845578, at *8 (11th Cir. Feb. 27, 2015); In re Sublett, 895 F.2d 1381, 1383–84 (11th Cir. 1990); see also Fed. R.

4

Bankr. P. 8013.  Mixed questions of law and fact are reviewed de novo.  In re Lentek Int'l, Inc.,

346 Fed. App'x 430, 433 (11th Cir. 2009).  "Under de novo review, [a] Court independently

examines the law and draws its own conclusions after applying the law to the facts of the case,

without regard to decisions made by the Bankruptcy Court."  In re Brown, No. 6:08-cv-1517-

Orl-18DAB, 2008 WL 5050081, at *2 (M.D. Fla. Nov. 19, 2008) (citing In re Piper Aircraft

Corp., 244 F.3d 1289, 1295 (11th Cir. 2001)).  Here, the Court finds that whether the Bankruptcy

Court erred in granting DM Records' Motion for Summary Judgment and dismissing the

involuntary petition is a mixed question of law and fact subject to de novo review.[4]  See, e.g., In

re Univ. Millennium Park, LLC, No. 8:10-BK-29022-MGW, 2011 WL 4634028, at *2 (M.D.

Fla. Oct. 5, 2011) (concluding that the bankruptcy court's determination of whether an entity is a

creditor under the Bankruptcy Code is a finding of fact subject to clear error review, while the

bankruptcy court's dismissal of an involuntary petition is a question of law subject to de novo

review).

ii.   Applicable Law

Section 303 of the Bankruptcy Code governs involuntary cases and provides in relevant

part:

> An involuntary case against a person is commenced by the filing with the bankruptcy court of a petition under chapter 7 or 11 of this title—
>
> > (1) by three or more entities, each of which is either a holder of a claim against such person that is not contingent as to liability or the subject of a bona fide dispute as to liability or amount, or an indenture trustee representing such a holder, if such noncontingent, undisputed claims aggregate at least $15,325[] more than the value of any lien on property of the debtor securing such claims held by the holders of such claims;

---

[4] DM Records argues that this issue is an issue of fact subject to a clear error standard of review. Appellee's Opp'n Br. at 5.  Under either a de novo or clear error standard, however, the outcome is the same.

> (2) if there are fewer than 12 such holders, excluding any employee or insider of such person and any transferee of a transfer that is voidable under section 544, 545, 547, 548, 549, or 724(a) of this title, by one or more of such holders that hold in the aggregate at least $15,325[] of such claims . . . .

11 U.S.C. § 303(b)(1)–(2).  Section 303(a) establishes who may be the subject of an involuntary petition, In re Basil St. Partners, LLC, 477 B.R. 846, 849 (Bankr. M.D. Fla. 2012), and Section 303(b) contains the numerosity and claims requirements for petitioning creditors to be able to file an involuntary petition.  Id.  Under Section 303(b), if the alleged debtor[5] has twelve or more creditors, three or more petitioning creditors are needed to commence an involuntary case.  Id.; see also 11 U.S.C. § 303(b)(1)–(2).  Conversely, if the alleged debtor has fewer than twelve creditors, one petitioning creditor is enough.  11 U.S.C. § 303(b)(2).  The number of creditors is generally determined on the date the involuntary petition is filed.  See, e.g., In re Atwood, 124 B.R. 402 (S.D. Ga. 1991); see also 2 Collier on Bankruptcy ¶ 303.14[3] (16th ed. 2012).  Further, to qualify as creditors under Section 303(b), both the petitioning creditors and alleged debtor's creditors must hold noncontingent, undisputed claims,[6] see 11 U.S.C. § 303(b)(1)(2); In re Basil St. Partners, LLC, 477 B.R. at 849, and the aggregate of the petitioning creditors' claims must be at least $15,325, 11 U.S.C. § 303(a).  Failure to satisfy the statutory requirements under Section 303(b) is grounds for dismissal of the involuntary petition.  See, e.g., In re E.S. Prof'l Servs., Inc., 335 B.R. 221, 227 (Bankr. S.D. Fla. 2005) subsequently aff'd sub nom. In re E.S. Prof'l Servs., Inc., 250 F. App'x 294 (11th Cir. 2007); In re Ramm Indus., Inc., 83 B.R. 815, 825 (Bankr. M.D. Fla. 1988).

---

[5] The term "alleged debtor" is used to refer to a debtor in an involuntary case prior to the entry of an order for relief.  In re Basil St. Partners, LLC, 477 B.R. 856, 858 (Bankr. M.D. Fla. 2012).

[6] On appeal, the parties do not dispute whether DM Records' creditors, including Isbell, hold noncontingent, undisputed claims.

Much of the litigation in contested involuntary cases revolves around who qualifies as a petitioning creditor and how many creditors are required to file the petition.  In re Norris, 183 B.R. 437, 450 (Bankr. W.D. La. 1995).  Courts are divided over whether small, recurring claims, such as claims for expenses like utilities, insurance premiums, and rent, should be counted for purposes of Section 303(b).  Compare Denham v. Shellman Grain Elevator, Inc., 444 F.2d 1376, 1379 (5th Cir. 1971), with In re Okamoto, 491 F.2d 496 (9th Cir. 1974); Theis v. Luther, 151 F.2d 397 (8th Cir. 1945); see also In re Atwood, 124 B.R. at 406 (recognizing this disagreement among the courts).  The Bankruptcy Code has no specific exception for such small, recurring claims, and a plain reading of the Code suggests that all creditors with claims should be counted to determine whether the alleged debtor has fewer than twelve creditors, unless expressly excluded by section 303(b)(2).  In re Atwood, 124 B.R. at 406.

Nevertheless, this Circuit's precedent holds that creditors holding small, recurring claims are excluded from the creditor count.  See Denham, 444 F.2d at 1378;[7] In re Smith, 123 B.R. 423, 425 (Bankr. M.D. Fla. 1990) aff'd, 129 B.R. 262 (M.D. Fla. 1991) (citing Denham, 444 F.2d at 1376); see also In re Atwood, 124 B.R. at 406; 2 Collier on Bankruptcy ¶ 303.14[4].  To be excluded under Section 303(b), however, a creditor's claim must be both small and recurring. See Denham, 444 F.2d at 1378; In re Smith, 123 B.R.at 425; see also In re Atwood, 124 B.R. at 406; 2 Collier on Bankruptcy ¶ 303.14[4].  If a debt is only small and not recurring (or recurring and not small), it could be counted.  In Denham, for example, the Fifth Circuit excluded seventeen of the alleged debtor's eighteen creditors.  See 444 F.2d at 1378.  The court held that

_____

[7] Although decided by the United States Court of Appeals for the Fifth Circuit, Denham is binding precedent in this Court.  See In re Smith, 123 B.R. 423, 425 (Bankr. M.D. Fla. 1990) aff'd, 129 B.R. 262 (M.D. Fla. 1991) (citing Bonner v. City of Prichard, 661 F.2d 1206 (11th Cir.1981) (holding that decisions of the Fifth Circuit rendered on or before September 30, 1981, "shall be binding as precedent in the Eleventh Circuit, for this court, the district courts, and the bankruptcy courts in the circuit")).

small debts, contracted to be paid monthly and on demand, such as claims for rent, groceries, and utilities, cannot be used by the alleged debtor to defeat an involuntary petition.  444 F.2d at 1378-79; see also In re Smith, 123 B.R.at 425.  The court in Denham reasoned that "it was not the intent of Congress to allow recurring bills such as utility bills and the like to create a situation which, by refusal of these small creditors to join in an involuntary petition, can defeat the use of the Bankruptcy Act by a large creditor, as in the subject case."  444 F.2d at 1379.

Likewise, in In re Smith, the bankruptcy court excluded fourteen of the alleged debtor's creditors holding claims for "regular recurring monthly expenses connected with the operation of the Debtor's business, such as bills for maintenance, utilities, and the like[,] . . . in amounts ranging from $20 to $275 . . . ."  123 B.R. at 425.  Citing Denham, the court observed that "[i]t is a well-established proposition that insignificant debts which are customarily paid on a regular basis should not be counted to defeat an involuntary petition."  Id. (citation omitted).

Under this Circuit's precedent, then, both criteria must be met for an alleged debtor's creditor to be excluded under Section 303(b): the creditor's claim must be small and it must be recurring.

### iii.   Analysis

Based on the foregoing, this Court finds that DM Records had at least twelve creditors on the petition date.

On appeal, Isbell asks the Court to reduce the number of creditors on DM Records' Rule 1003 list down to nine.  See Appellant's Reply Br. 10.  Of the twenty-four creditors Isbells seeks to exclude, nine are music publishers holding claims to royalty payments DM Records is

obligated to make upon selling or licensing a song.[8]  Id. at 13-14.  Isbell argues that these royalty

payments are de minimus, recurring debts excludable under Section 303(b).  Id. at 13.  In support

of this characterization, Isbell points to DM Records' practice of creating a "royalty statement"

each quarter, or every three months, which sets forth the royalty payments due that quarter.  Id.

These royalty statements are prepared even if no royalties are due because, for example, fewer

than $25 worth of royalties accrued in those three months.[9]  Id.  So, Isbell contends, "[e]ach

Royalty Statement represents a recurring expense for debtor [sic] spanning a period of three

months."  Id.  DM Records, on the other hand, counters that these royalty payments, while de

minimus, are not recurring, and so should be counted in determining the number of creditors.

Appellee's Opp'n Br. 11–12.

        The Court finds that these royalty payments are not recurring debts.  Unlike the recurring

debts in Denham and In re Smith, such as debts for rent, utilities, maintenance, etc., which are

"practically secured, as [these debts] have to be paid month to month before further necessities

can be obtained," Denham, 444 F.2d at 1379, the royalty payments here accrue only if the song

is sold.  It is possible that a song could go days, months, even years without being sold, in which

case no royalty payment is due.  For instance, as Isbell self-defeatingly points out on appeal, DM

Records has not made any royalty payments to Wixen Music Publishing since August 2009

because it has yet to accrue $25 in royalties.  Appellant's Br. 13.  Given their contingent,

irregular nature, then, DM Records' royalty payments are not recurring debts.

---

[8] The nine music publishers are Kobalt Music Publishing, Royalty Share, Harry Fox Agency, Amazement Music, Disney Music Group, Evergreen Hip Hop, Flash Jeff Music, Music of Ever Hip Hop, and Wixen Music Publishing.  See Appellant's Br. 13; Appellee's Opp'n Br. Ex. A.

[9] According to the evidence adduced in the proceedings below, it is industry practice to wait until at least $25 in royalties have accrued on a particular song before remitting payment.  See Appellant's Br. 13.

It follows that as non-recurring debts, the nine music publishers must be counted as creditors for purposes of Section 303(b).  In doing so, even if the Court were to exclude the other fifteen creditors Isbell seeks to remove from the list of creditors, DM Records would still have more than twelve creditors as of the petition date.  And so, because Isbell failed to join at least two other petitioning creditors, the involuntary case was procedurally improper.  Accordingly, the Court holds that the Bankruptcy Court did not err in granting DM Records' Motion for Summary Judgment and dismissing the involuntary petition.

> **2.  The Issue of Whether the Bankruptcy Court Erred in Denying Isbell's Motion for Summary Judgment is Moot**

This issue is moot.  As explained above, because the Court holds that the Bankruptcy Court did not err in finding that DM Records had at least twelve creditors on the petition date, the involuntary case was procedurally improper and subject to dismissal.  As a result, the question of whether the Bankruptcy Court erred in denying Isbell's Motion for Summary Judgment upon finding material issues of fact over whether DM Records was generally paying its debts as they became due is academic.  The Court thus declines to address this issue.

## III.   CONCLUSION

For the foregoing reasons, the Bankruptcy Court's March 11, 2014, Order (1) Granting in Part and Denying in Part Alleged Debtor's Motion for Summary Judgment, (2) Denying Petitioning Creditor's Motion for Summary Judgment, and (3) Dismissing Involuntary Petition, (Bankr. ECF No. 98), is AFFIRMED.

It is further ORDERED AND ADJUDGED that the Bankruptcy Court retains jurisdiction to award fees and costs pursuant to 11 U.S.C. § 303(i).

It is further ORDERED AND ADJUDGED that the Clerk of Court shall CLOSE this case.  All pending motions not otherwise ruled upon are DENIED AS MOOT.

DONE AND ORDERED in Chambers at Miami, Florida, this <u>26th</u> day of March, 2015.


_____
K. MICHAEL MOORE
CHIEF UNITED STATES DISTRICT JUDGE


cc:     All counsel of record